**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**NATHAN S.,**

**Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**Case No. 1:24-cv-00452-TK**

**OPINION AND ORDER**

## OPINION AND ORDER

This case is before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's applications for disability insurance benefits and supplemental security income. That final decision was issued by the Appeals Council on March 5, 2024. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 12) and the Commissioner filed a similar motion (Doc. 18). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant.

## I. BACKGROUND

Plaintiff protectively filed his applications for benefits on November 7, 2019, alleging a disability beginning on January 1, 2019. After initial administrative denials of his applications, Plaintiff took part in a hearing before an Administrative Law Judge on August 18, 2022. Both Plaintiff and a vocational expert, Susan Moyes, testified at the hearing.

The ALJ issued an unfavorable decision on March 1, 2023. In that decision, the ALJ found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, and that he had not engaged in substantial gainful activity since his alleged onset date. Next, the ALJ determined that Plaintiff suffered from severe impairments including migraine headaches, history of traumatic brain injury, history of cervical fusion at C5-6, post traumatic stress disorder, obsessive compulsive disorder, organic personality disorder, depressive disorder, and anxiety disorder. The ALJ further found that none of these impairments, considered singly or in combination, met or equaled the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the ability to perform a limited range of medium work. While being able to meet the exertional demands of such work, the ALJ concluded that Plaintiff was limited to working in

environments where there was no direct exposure to bright or flashing lights or hazards such as unprotected heights and moving machinery. Additionally, he was limited to simple, routine tasks that could be learned after a short demonstration and within 30 days; he could make simple work-related decisions; he could not independently develop work strategies or identify workplace needs; he could interact only superficially with the public and only occasionally with coworkers; he could not engage in work that required teamwork; he could be subject to only occasional supervision; and any work which he did would involve doing the same tasks every day with little variation in location, hours, and tasks.

Plaintiff had past relevant work as a construction worker and a drywall applicator. The ALJ determined, based on the testimony of the vocational expert, that Plaintiff could not perform either of those jobs, but he could do unskilled medium jobs like cleaner II, dining room attendant, and linen room attendant. He also found that those jobs existed in significant numbers in the national economy. As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

In his motion for judgment on the pleadings, Plaintiff raises these arguments:

> 1. The ALJ erred in failing to properly and individually assess the social limitations separately in interacting with supervisors, coworkers, and the public.
>
> 2. Improper substitution of the ALJ's "non-medical" judgment as a lay person over that of any doctor regarding [Plaintiff's] physical limitations.

Plaintiff's memorandum, Doc. 12-1, at 1.

## II. THE KEY EVIDENCE

### A. Hearing Testimony

Plaintiff, who was 40 years old at the time of the administrative hearing, first testified that he had not driven in the last three to four years. He had completed a small amount of college before he suffered a skull fracture. He was living in an apartment with his girlfriend. Plaintiff said that he last worked in 2014 erecting drywall, although he later acknowledged that he had done both drywall and demolition work in 2015.

Next, Plaintiff testified to problems with his memory and said that he needed help remembering things. He had been undergoing psychiatric treatment and was taking medication to help with anxiety and insomnia. Plaintiff also reported that he had frequent headaches which incapacitated him. He suffered from depression as well as mood swings and episodes of anger. Those occurred even when he was working although they were not as severe. He also testified to having called off work frequently due to migraines. Plaintiff said his inability to work was primarily due to trust issues, difficulty being around people, memory problems, and difficulty in understanding instructions.

The vocational expert, Ms. Moyes, first testified that Plaintiff's past work as a demolition worker and a drywall applicator was performed at the medium exertional level. She was then asked questions about a person with Plaintiff's vocational profile who could do medium work with certain environmental limitations and who was generally limited to simple, routine work involving only superficial interaction with the public, occasional interaction with coworkers, and only occasional supervision. Based on the question asked to her, Ms. Moyes said that such a person could not do Plaintiff's past work but could perform jobs such as cleaner two, dining room attendant, and linen room attendant. She also gave numbers for those jobs as they existed in the national economy. If the person could not sustain concentration to perform even simple tasks on a regular and consistent basis, however, that person could not work. The same would be true for someone who regularly missed one day of work per month or who was off task 15% of the time.

### B. Medical Evidence

The relevant medical records show the following. Plaintiff was seen at the emergency room in April of 2017 after being in a car accident. He reported neck pain and was given a cervical collar. Plaintiff's medical history included a previous skull fracture. When seen again in September of 2018 with complaints of right-sided flank pain, his neurological exam was essentially normal and he denied having headaches. The diagnosis at that time was a kidney stone. Plaintiff saw a primary care physician in 2020, at which time his diagnoses included drug addiction in remission and anxiety and depression. The latter conditions were described as stable on medication. At an office visit on July 7, 2020 which was for medication management, Plaintiff denied symptoms of depression or social functioning but did have feelings consistent with generalized anxiety. Earlier notes from the same treating source are similar. In 2021, notes show a diagnosis of depression. Examinations at times showed a flat affect and apathetic mood but normal attention, concentration, and memory, and a euthymic mood at other times. That same year, he was prescribed medication to take at the onset of a migraine.

### C. Opinion Evidence

Plaintiff saw Dr. Long for a consultative psychiatric evaluation on May 28, 2020. At that time, he had been receiving psychiatric medication for about a year but had not been seeing a counselor lately due to the pandemic. Plaintiff said that he had experienced learning disabilities since fracturing his neck in an accident in 1998, and then again after his 2005 skull fracture. He said he had difficulty sleeping and experienced frequent nightmares, and also said that he was on methadone therapy. On examination, his affect was full and appropriate and his mood was euthymic. Dr. Long thought that Plaintiff might have a mild impairment regarding simple tasks and a moderate impairment in relating to others. She also believed he was moderately impaired in his ability to maintain attention and concentration and to regulate his emotions. (Tr. 666-70).

On September 10, 2020, Dr. Lee conducted a consultative neurologic examination. Plaintiff described chronic neck pain from his 1998 accident and migraines from the skull fracture. He also reported symptoms of anxiety and PTSD. On examination, no significant

findings were noted. Dr. Lee concluded that Plaintiff had no physical limitations. (Tr. 693-96).

There are also state agency reviewers' opinions as to Plaintiff's functional capacity. Dr. Vinluan did not believe Plaintiff had any exertional limitations but had non-exertional limitations due to high blood pressure, and Dr. Abueg agreed. Dr. Kamin stated that Plaintiff had moderate limitations in his ability to interact with others, to maintain socially appropriate behavior, to respond appropriately in the work setting, to be aware of normal hazards, and to set realistic goals independently of others. He had the ability to meet the basic demands of unskilled work in a low contact environment. Dr. Juriga concurred with that latter assessment although noting a somewhat greater number of moderate work-related limitations.

## III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV. DISCUSSION

### A. Social Interaction Limitations

As his first claim of error, Plaintiff asserts that the ALJ erred in his assessment of

Plaintiff's social interaction limitations, arguing that "there is simply no substantial evidence to support that [Plaintiff] can have superficial interaction with the public, but then would be capable of occasional interaction with co-workers and supervisors." Plaintiff's memorandum, Doc. 12-1, at 14. Plaintiff further argues that none of the opinion evidence as to mental limitations makes any distinction among those three groups, and that for the ALJ to have done so in the face of an absence of evidence was error. The Commissioner responds that the record as a whole supports the ALJ's findings and that, in any event, the fact that ALJ imposed restrictions that were more severe than indicated in the medical opinions is not grounds for remand.

The ALJ explained his decision on this issue in this way. First, as to Dr. Kamin's opinion that Plaintiff was moderately limited in his ability to interact with others, the ALJ found that this opinion was not consistent with the objective record and that greater limitations were warranted. (Tr. 86). The ALJ then summarized the results of Dr. Long's consultative examination, which included "possible" moderate limitations in Plaintiff's ability to interact with others, and found her opinion to be persuasive and consistent with the record, citing to evidence that Plaintiff's PTSD produced his alleged self-isolation and irritability. *Id*. Lastly, the ALJ considered Dr. Juriga's record review, and found it also to be persuasive with respect to its conclusion that Plaintiff was moderately limited in all areas of mental functioning. *Id*.

It seems clear that had the ALJ simply incorporated the findings of Drs. Long and Juriga and determined that Plaintiff had a moderate limitation in interacting with all categories of others, that determination would have been based upon the evidence. It is also true that Plaintiff's testimony suggested that he had occasional problems dealing with others in the workplace and that he did not like being in public places around large numbers of people, evidence that the ALJ cited in support of his findings and which could indicate a greater limitation when interacting with members of the public . Even if that evidence did not support the ALJ's decision, the fact that the ALJ imposed additional restrictions beyond those indicated in the medical opinions is, as this Court has often held, simply harmless error (if it was error at all). So, for example, in *Kristin H. v. Comm'r of Soc. Sec.*, 2025 WL 461452, *5 (W.D.N.Y. Feb. 11, 2025), the Court concluded that an error of the type alleged here is harmless.

This principle is well-explained in *Jiminez v. Colvin*, 2018 WL 459301, at *3 (W.D.N.Y. Jan. 18, 2018), where this Court said:

> [B]ecause the RFC described by the ALJ was erroneous only to the extent that it may have incorporated greater limitations than are supported by the evidence of record rather than fewer, that error is harmless. It is axiomatic that if a position can be performed by a person who is incapable of interacting with the general public, it can also be performed by an individual who is limited to no more than "occasional" public interaction. As such, plaintiff would have been found "not disabled" even if the ALJ had adopted the medical source statements verbatim and found that plaintiff's moderate difficulties in social interaction allowed him to occasionally (rather than never) interact with the general public. As such, remand would be futile. *See generally Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)

(remand is not necessarily where it would result in the same conclusion).

Consequently, this first claim of error provides no basis for an order of remand.

**B. Physical Limitations**

Plaintiff's second claim of error is that the ALJ erred by rejecting all of the medical opinion evidence concerning Plaintiff's physical limitations but then, interpreting only the raw medical data, crafted a specific physical residual functional capacity finding. In particular, Plaintiff contends that the ALJ was not able, as a lay person, to assess limitations due to Plaintiff's migraine headaches, and that he ignored the fact that those headaches would have affected Plaintiff's ability to attend work on a regular basis. The Commissioner argues, however, that even though the opinion evidence was all found not to be persuasive, the ALJ properly based his finding on Plaintiff's testimony as to his limitations.

The ALJ did, as the parties acknowledge, find the opinions expressed by Drs. Vinluan, Abueg, and Lee all not to be persuasive because they were inconsistent with the medical records, including Plaintiff's history of cervical fusion and the fact that he was prescribed medication for his migraines. (Tr. 85-86). Prior to making that determination, the ALJ noted that despite showing that Plaintiff underwent a cervical fusion, the records did not indicate that this condition caused any functional limitations or necessitated any ongoing treatment. There was also no evidence of muscle atrophy or loss of strength. (Tr. 82). Further, the ALJ reviewed the evidence concerning migraine headaches and correctly noted that they had reportedly improved with treatment and that Plaintiff was advised to avoid triggers, suggesting that "the claimant is not limited to the extent alleged by migraine headaches." *Id*. For those reasons, the ALJ limited Plaintiff to medium work and to environments that did not involve triggering events such as bright or flashing lights.

As this Court said in *Thomas B. v. Comm'r of Soc. Sec.*, 2024 WL 5116571, at *3 (W.D.N.Y. Dec. 16, 2024),

> An ALJ generally "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words, "[a]n ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion." *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation omitted). But "[t]he Second Circuit has rejected the argument that remand is required due to a lack of medical opinions when 'the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.' " *Keller v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 345, 352 (W.D.N.Y. 2019) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)).

In this particular case, Plaintiff does not appear to argue that the ALJ committed a

reversible error by limiting him to work performed at the medium exertional level, which is certainly a finding more favorable to Plaintiff than the medical opinions would warrant. As to the issue of migraine headaches, the Court concludes that, on this record, the ALJ had enough evidence from both the medical records and from Plaintiff's own testimony to conclude that although Plaintiff's migraine headaches constituted a severe impairment and that some environmental limitations were necessary to accommodate them, the restriction of no exposure to triggers in the workplace, together with the effectiveness of medications, would permit Plaintiff to engage in substantial gainful activity. Consequently, this is one of those cases where the rejection of all of the medical opinions did not prevent the ALJ from basing a residual functional capacity finding on the remaining credible evidence. As a result, a remand based on this issue is not warranted.

## V. CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 12), **GRANTS** the Commissioner's motion (Doc. 18), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security Commissioner.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**